UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SOLOFILL, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-16-2702 |
| § | |
| ADRIEN RIVERA, *et al.*, § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Solofill, LLC's ("Solofill") application for preliminary injunctive relief to require defendants Adrien Rivera, individually, and Adrian Rivera Maynez Enterprises, Inc. (collectively "Rivera") to cease any trademark and trade dress infringement against Solofill. Dkt. 22. An oral hearing was held on December 14, 2016, and the court informed the parties it would rule on Solofill's requests for both preliminary and permanent injunctions (Dkt. 1). Dkt. 35. After the hearing, both parties filed supplemental briefings. Dkts. 31, 32. Rivera objected to Solofill's supplemental briefing. Dkt. 33. Based on the complaint, the motion, the response, the evidence presented at the injunction hearing, the supplemental briefings and the objections thereto, and the applicable law, the court finds that Solofill's motion for preliminary injunctive relief and permanent injunctive relief should be DENIED.

**I. BACKGROUND**

This case is a trademark and trade dress controversy between two producers of after-market reusable brewing containers designed to be used with a Keurig coffee maker, known as "K-cups." Dkt. 1 at 2. Solofill is organized and has a principle place of business in Texas. *Id.* at 1. Adrian Rivera is the owner of Adrian Rivera Maynez Enterprises, a California company which sells its

reusable brewing containers under the name "ECO-FILL." *Id.* Solofill and Rivera have also been engaged in litigation in the International Trade Commission and the Southern District of California arising from Rivera's allegations that Solofill is infringing on its patent for reusable brewing container technology. Dkt. 22 at 5–6. In its complaint, Solofill asserts claims against Rivera for trademark and trade dress infringement claims under the Lanham Act and under common law, unfair competition, unfair and deceptive trade practices, misappropriation, and unjust enrichment. Dkt. 1 at 20–23.

On September 28, 2010, Solofill entered the market with the "K1," the first version of its podless reusable K-cup under its mark. Dkt. 22 at 1. During its first two years on the market, Solofill sold nearly 1.5 million units through retailers such as Bed, Bath and Beyond, Target, and Walmart. Dkt. 22, Vu Dec. at 1, 8. At the same time, Rivera was also operating in the K-cup market, selling a product called "EZ-Cup." Dkt. 22, Vu Dec at 4, Ex. D. The EZ-Cup, unlike the K1, was only semi-reusable because it featured disposable mesh filters that are discarded after brewing. *Id.* In October 2011, Solofill updated its product to the "K2" version, and with that update, changed its bubble-style packaging to a new rectangular box-style packaging. Dkt. 22 at 2, Vu Dec. at 9, 11–13, Exs. E, F, G. In 2012, Rivera introduced a fully-reusable pod under the name "ECO-FILL," which Solofill alleges has a similar look and design to its own packaging. Dkt. 22 at 3.

On April 23, 2013, Solofill registered a trademark for its company name with the U.S. Patent and Trademark Office, Reg. No. 4,322, 850. Dkt. 22, Ex. B. Solofill also asserts that it has common law trademarks and trade dress protection for the design of its packaging, the naming of its "Octoflo" and "Decaflo" technology that injects water into the cup, and the design of its logo. Dkt. 22, Ex. G, H, Vu Dec. at 21. Solofill describes its packaging as "an opaque back, [with] clear sides and front with opaque upper and lower banners" and displaying a distinct set of pictorials, logos, and text.

Dkt. 22 at 2, Ex. H, J.  Solofill's logo contains a coffee cup as part of its lettering, with a stylized steam that emanates from the cup.  Dkt. 22, Vu Dec. at 14.

On November 6, 2012, Rivera registered a trademark for the name ECO-FILL with the U.S. Patent and Trademark Office, Reg. No. 4,239,190.  Dkt. 24, Ex. C.  ECO-FILL is sold in a rectangular box, with clear sides, an opaque upper and lower banner, with instructional pictorials and text.  Dkt. 22, Vu Dec. at 18–19, Ex. H; Dkt. 24, Ex. C.  ECO-FILL uses a water injection system called "POLY-FLO."  *Id*.  ECO-FILL's logo contains a coffee cup in the lettering with stylized steam.  *Id.*  In December 2012, Solofill updated its product to the "K3" version, and darkened the color scheme of its packaging; Rivera also made similar changes to the ECO-FILL packaging.  *Id.* at 5, Vu Dec. at 22-23, Exs. H, J.

Robert Vu, the owner of SOLOFILL, alleges that he was not aware of the ECO-FILL K-cup when it was introduced in 2012.  Dkt. 22, Vu Dec. at 15–16.  Solofill alleges it learned of ECO-FILL's existence in April 2014, when Rivera sued Solofill for patent infringement.  Dkt. 22 at 5, Vu Dec. at 24.  On September 6, 2016, Solofill filed its original complaint against Rivera for trademark and trade dress infringement.  Dkt. 1.  On November 4, 2016, Rivera filed a motion to dismiss.  Dkt. 14.  Solofill responded on November 28, 2016, and Rivera replied.  Dkts. 18, 21.

On December 6, 2016, Solofill motioned for a preliminary injunction.  Dkt. 8.  Rivera responded to the motion.  Dkt. 24.  On December 14, 2016, the court held an oral hearing on the motion for a preliminary injunction and gave the parties ten days to file any supplemental briefing.  At the oral hearing, Solofill's counsel told the court he did not need to clarify any arguments with a supplemental briefing.  Dkt. 35 at 91.  However, both parties did file supplemental briefings, and Solofill added new evidence to its supplemental briefing.  Dkts. 31, 32.  Rivera objects to the new

evidence attached to Solofill's supplemental briefing, because Solofill had ample opportunity to present that evidence at the hearing. Dkt. 33.

## II. LEGAL STANDARDS

### A. Injunctive Relief

The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A preliminary injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion. *Harris Cty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999). To obtain a preliminary injunction, the movant must establish the following: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the preliminary injunction is denied; (3) that the potential injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the preliminary injunction will not disservice the public interest. *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).

The requirements for issuing a permanent injunction are the same as a preliminary injunction except that a likelihood of success on the merits is not a required showing. In order to receive a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837 (2006). A party seeking a permanent injunction in a trademark infringement case must show (1) that the mark is

protectable; (2) the party is a senior user; and (3) there is a likelihood of confusion between the two marks that (4) will actually result in irreparable injury for which there is no adequate legal remedy. *Union Nat. Bank of Tex., Laredo, Tex. v. Union Nat. Bank of Tex., Austin*, 909 F.2d 839, 844 (5th Cir. 1990).

## B.     *Trademark Infringement*

To prevail on a claim of trademark infringement under the Lanham Act, plaintiff must show: (1) it possesses a valid mark; and (2) defendant's use of its trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship. *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). However, it is important to remember that "mere reproduction of a trademark does not constitute trademark infringement if there is no likelihood of confusion." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:28 (4th ed. 2009). And, "likelihood of confusion" is not *possible* confusion, it is *probable* confusion. *Bd. of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). In this respect, "[c]ontext is especially critical," and a court is required to "consider the marks in the context that a customer perceives them in the marketplace." *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 485 (5th Cir. 2004).

### III. ANALYSIS

The "extraordinary equitable remedy" of an injunction requires that the plaintiff demonstrate that, without injunctive relief, he will suffer an irreparable injury for which damages are an inadequate remedy. *Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008); *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008). The Fifth Circuit has opined that, in some circumstances, irreparable injury can be presumed based on a showing of a likelihood of confusion in a trademark infringement claim. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (holding that "[a]ll that must

be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion, injury is presumed."); *see also Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) (commenting that "[w]hen likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of the goods or services . . . ." but also noting "[t]his Court has avoided 'expressly adopting this presumption of irreparable injury. . .'" (quoting *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., LLC*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) (Rosenthal, J.) and *S. Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 188 (5th Cir. 1982)).

Solofill argues that there is a likelihood of confusion by presenting evidence supporting the validity of its marks and trade dress and providing examples of actual and possible confusion. *See* Dkt. 22 at 11-20. Rivera challenges the validity of Solofill's marks and the existence of confusion. *See* Dkt. 24 at 3–5. However, the court does not need to reach any conclusions regarding whether Solofill's succeeded in establishing the validity of its marks or likelihood hood of confusion because Solofill has not established irreparable harm.[1]

The court will first consider whether Solofill's delay in requesting injunctive relief rebuts the presumption that likelihood of confusion causes an irreparable injury to Solofill and then consider whether the remaining injuries alleged by Solofill are caused by the infringement.

**A.    Delay**

Rivera contends that Solofill's delay in seeking injunctive relief precludes a finding of irreparable harm. Even though likelihood of confusion can give rise to the presumption of irreparable

---

[1] In its supplemental briefing, Solofill offers a market study and additional declarations in support of its claims of confusion. Dkt. 31. The defense objects to the introduction of this new evidence after the hearing. Dkt. 33. However, the court need not rule on the admissibility of this evidence, because it is not performing a likelihood of confusion analysis.

harm, a plaintiff's delay in seeking relief without an adequate excuse rebuts that presumption. The Fifth Circuit opined "[t]here is no doubt that laches may defeat claims for injunctive relief." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626 (5th Cir. 2013) (citing *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 n.14 (5th Cir.1982)); *Symetra Life Ins. Co. v. Rapid Settlements Ltd.*, 612 F. Supp. 2d 759, 774 (S.D. Tex. 2007) (Rosenthal, J.) ("[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief. Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm." (quoting *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, No. 3:050094D, 2006 WL 1540587, at *3 (N.D. Tex. June 6, 2006))).

However, there are two ways a court may find irreparable harm and enjoin a defendant even after a delay: (1) if the plaintiff offers a good explanation or excuse for the delay, or (2) if there is a showing of bad faith on the part of the defendant. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008); *Symetra Life Ins.,* 612 F. Supp. 2d at 774. First, the court will consider Solofill's delay in seeking injunctive relief, and then address whether Solofill mitigated that delay with a good explanation or with an allegation of bad faith on the part of the defendant.

First, the court finds that Solofill has delayed between three months and two years in seeking injunctive relief. Months-long to years-long delays in seeking an injunction for offending conduct have been enough for courts to hold against a finding of irreparable injury. *See, e.g. State of Tex. v. Seatrain Int'l, S. A.*, 518 F.2d 175, 182 (5th Cir. 1975) (finding a nine-month delay in seeking a preliminary injunction allows "a faint shade of laches to fall on their cause."); *ADT, LLC v. Capital*

*Connect, Inc.*, 145 F. Supp. 3d 671, 698 (N.D. Tex. 2015) (finding an eight-month delay in seeking injunctive relief without justification meant failure to prove imminent need); *Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*, No. 7:13-CV-664, 2014 WL 2918581, at *3 (S.D. Tex. June 26, 2014) (holding that a multiple year delay in seeking an injunction "counsels against finding irreparable injury would result"); *Innovation Ventures, LLC v. Ultimate Lifestyles, LLC,* No. 4:08–CV–232, 2009 WL 1490588, at *3 (E.D.Tex. May 27, 2009) (no irreparable injury where plaintiff waited nine months after learning of an infringing sale and provided no explanation for the delay); *Ellipse Commc'ns, Inc. v. Caven*, No. CIV.A.3-07-CV-1922-O, 2009 WL 497268, at *2 (N.D. Tex. Feb. 26, 2009) (denying an injunction because a seven-month delay, with no excuse, rebuts the presumption of irreparable harm).

Here, the alleged trademark infringement began when the ECO-FILL product entered the market in 2012. Dkt. 22 at 3; Dkt. 24 at 9. Solofill claims it became aware of the existence of ECO-FILL and its similarity in name, packaging, and design when Rivera sued Solofill for patent infringement in August 2014. Dkt. 22 at 7–8, Vu Dec. at 24. Solofill waited over two years to file its current law suit, and it did not move for a preliminary injunction until three months after that. Dkts. 1, 22.

Thus, despite the existence of ongoing related litigation between these two parties and Solofill's awareness of ECO-FILL's similar packaging, logo, and style, Solofill took over two years to file a complaint for trademark infringement. Dkt. 22, Vu Dec. at 35. Then, Solofill waited three more months between filing a trademark infringement complaint and requesting a preliminary injunction. Dkt. 22.

Solofill first attempts to mitigate the delay by offering explanations for the reason it did not file for an injunction until December 2016. Delay does not negate a finding of irreparable harm if the

plaintiff has a good explanation or excuse for the delay. *See PIU Mgmt., LLC v. Inflatable Zone Inc.*, CIV.A. H–08–2719, 2010 WL 681914, at *7 (S.D.Tex. Feb. 25, 2010) (Miller, J.) (finding "that the Plaintiffs have established 'a good explanation' for delaying the filing of their request for preliminary relief" where plaintiffs first tried to negotiate the dispute with defendant before filing suit, and defendant contributed to delay by resisting service (internal quotations omitted)).

Solofill makes three arguments for the court to excuse its delay—(1) that it was delayed by the ITC action, (2) that it needed time to find counsel, and (3) that it only became aware of declining sales recently. Dkt. 22. First, Solofill alleges "we were completely tied up with his false claim that we copied him, and not vice versa, from August 2014 until now." Dkt. 22, Vu Dec. at 35. The court does not find this a reasonable excuse because the patent infringement lawsuit certainly did not preclude Solofill from making counterclaims in trademark infringement simultaneously. Second, Solofill argues that it delayed because it needed to find new counsel for the trademark infringement claim. Dkt. 35 at 38. Mr. Vu testified that he did not turn his attention to the trademark case until the ITC case completed in April 2016. *Id.* Then, he took several months to select an attorney to represent his company in the trademark infringement case before securing his present counsel in August 2016. *Id*. However, the court does not find this a reasonable excuse either. Even if this excuse explains the four months of delay between April and the filing of the complaint, it does not explain the three-month delay between filing the complaint and the motion for the injunction.

Third, Solofill alleges that it did not become aware of damages from declining sales until recently. Jacqueline Vu, who manages Solofill's finances, testified that because of the way ordering in the business works sales declines may not be noticeable on a month-to-month basis. Dkt. 26. Therefore, she testified that Solofill did not notice a drop in sales until November 2015 when it became possible to make a year-to-year comparison. *Id*. However, even if the court accepts this

premise, it still does not explain why Solofill took another year to seek relief.  Even when viewed in the light most favorable to Solofill, none of these three excuses offers an explanation for the delay between the filing of the complaint in September and the filing of the motion for an injunction three months later or why Solofill did not litigate the trademark claim simultaneously with the patent infringement claim.  Therefore, even when the court considers these three excuses together, the delay does not appear to be warranted.

Next, Solofill attempts to mitigate the delay by arguing that Rivera has "engaged in a systematic pattern of willful infringement and copying." Dkt. 22 at 24.  In *Smack Apparel Co.*, the Fifth Circuit held that an issue of delay can be overcome if the defendant acted in bad faith.  550 F.3d at 490.  However, in that case, the defendant admitted that he intentionally incorporated the plaintiff university's logo, colors, and indicia specifically to call attention to the university through its products and to derive a benefit from the university's reputation.  *Id*.  Here, Solofill failed to provide any similarly compelling evidence of Rivera's bad intentions.  Instead, Solofill offers conclusory statements that Rivera's pattern of changing his product packaging to match Solofill's demonstrates bad intention.  Dkt. 11, Vu Dec. at 19.  The court does not find this alleged pattern of conduct sufficient to establish an issue of Rivera's intentions..

The delay in requesting injunctive relief, without an adequate excuse and lacking proof of Rivera's  bad faith, leads the court to conclude that Solofill is not experiencing irreparable harm.

**B.     Causation**

Solofill also alleges it is being harmed in the form of lost sales which demands injunctive relief.  Solofill makes the argument that its declining sales and loss of business from major retailers provides evidence of the irreparable harm caused by the alleged infringement.  Dkt. 22, Vu Dec. at 25–27.  Solofill argues that it lost customers and contracts at big box retailers, amounting to a loss of

millions in revenue, along with lost value from advertising, development costs, packaging, art work, and promotional materials. *Id.* To the extent that an injunction, rather than monetary damages, is an appropriate remedy for such a decline, Solofill does not offer any evidence to show that its decline in sales was caused by confusion with Rivera's allegedly infringing ECO-FILL product. *See Decks Appeal v. GTE Directories Sales Corp.*, 81 F.3d 154, 155 (5th Cir. 1996) (citing to *Univ. Computing Co. v. Mgmt. Science Am., Inc.*, 810 F.2d 1395, 1398 (5th Cir.1987)) (holding that evidence of declining sales is "speculative" because the plaintiff "fails to present a basis for determining how much of its damages resulted from [defendant's] wrongful acts").

Here, Solofill offers evidence of harm through records of its declining sales between 2014 and 2016. Dkt. 28, Exs. N, O, P, Q. Though Solofill accuses Rivera of beginning its infringing activities in 2012, Solofill's sales actually grew through 2014 before beginning to fall off.[2] *Id.*; Dkt. 31 at 3. Rivera argues that it could not have harmed Solofill by any trademark infringement because Solofill's sales actually increased from 2012 to 2014 despite ECO-FILL's presence in the marketplace. Dkt. 31 at 3. But, the court observes, even if Solofill's sales increased during this time, the sales may have been increasing at a lower rate because of a competing product causing confusion.

However, Rivera also offers a compelling alternate theory of causation for Solofill's decline in sales that also tracks the sales data—compatibility with the Keurig Version 2.0 coffee machine. The Keurig Version 2.0 machine was introduced in 2014 and requires an updated K-cup design to interface with its sensor. Dkt. 31, Rivera Dec. at 3. ECO-FILL's 2.0 product, introduced in 2014, is compatible with Keurig 2.0 machines. *Id.*; Dkt. 35 at 58. Solofill did not develop a compatible product until

---

[2] Solofill presented additional evidence in its supplemental briefing regarding the sales drop off. Dkt. 31. Rivera objects to admitting the evidence. Dkt. 33. The court need not rule on the objection because none of this additional evidence conflicts with the sales history already available in the record.

sometime in 2015, and it is unclear if it was ever widely sold. Dkt. 35 at 58–59. Ms. Vu's testimony and exhibits regarding declining sales only referenced the K1, K2, and K3 Solofill products that were compatible with the original Keurig Version 1.0 coffee machine. To further rebut Solofill's allegations that consumers were choosing ECO-FILL out of trademark confusion, rather than compatibility with the new Keurig machine, Rivera argues that ECO-FILL is actually a more expensive product. Dkt. 31, Rivera Dec. at 4–5.

The court observes that Solofill's decline in sales seems to be more directly correlated with the arrival of the Keurig Version 2.0 machine in 2014 than with the alleged trademark infringement that began in 2012. Therefore, Solofill has not sufficiently demonstrated that trademark infringement caused this harm to its business.

In conclusion, Solofill fails to demonstrate that it has experienced or will experience irreparable harm that can only be cured with injunctive relief because (1) it delayed in moving for an injunction and (2) it failed to demonstrate its injuries were caused by Rivera's alleged infringing conduct. Because irreparable harm is a required element for the court to issue a preliminary or permanent injunction, Solofill's motion for injunctive relief is DENIED. Dkts. 1, 22.

### IV. CONCLUSION

Solofill's motion for preliminary (Dkt. 22) and permanent (Dkt. 1) injunctive relief is DENIED.

Signed at Houston, Texas on February 8, 2017.

_____
Gray H. Miller
United States District Judge